# STATE OF MICHIGAN

# COURT OF APPEALS

CARL BERRY,

        Plaintiff-Appellant,

v

CATHY M. GARRETT, WAYNE COUNTY
ELECTION COMMISSION, PLYMOUTH
TOWNSHIP CLERK, and PLYMOUTH
TOWNSHIP ELECTION COMMISSION,

        Defendants-Appellees,

and

DONALD F. SCHNETTLER, and KURT L.
HEISE,

        Intervening Defendants-Appellees.

FOR PUBLICATION
June 17, 2016
9:00 a.m.

No. 333225
Wayne Circuit Court
LC No. 16-006147-AW

Before: WILDER, P.J., and K.F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right from the circuit court's order denying his requested writ of mandamus against defendants. We affirm in part and reverse in part.

This case arises out of affidavits of identity filed by intervening defendants Donald F. Schnettler and Kurt L. Heise regarding the August 2, 2016 primary election in Plymouth Township (Plymouth). Schnettler and Heise sought, respectively, the positions of township trustee and township supervisor. It is undisputed that, in their affidavits of identity, neither Schnettler nor Heise provided a precinct number as required by MCL 168.558, nor did either timely cure that defect.

Plaintiff is a registered voter and a resident of Plymouth. He instituted this action on May 13, 2016, by filing a three-count complaint. In relevant part, the complaint sought a writ of mandamus against defendants. Plaintiff also filed an ex parte motion to show cause why a writ of mandamus should not issue. Plaintiff alleged that, because of the defect in Schnettler and Heise's affidavits of identity, defendants had a clear legal duty not to place Schnettler and

-1-

Heise's names on the ballot for the August 2, 2016 primary election. Plaintiff further alleged that he had a clear legal right to performance of defendants' statutory duties regarding the primary election. Defendants responded, arguing that they had no clear legal duty to "investigate" the accuracy of the information in the affidavits at issue. Defendants further argued that, in any event, the relief sought by plaintiff was inappropriate because (1) even assuming that he could demonstrate the existence of a clear legal duty on behalf of defendants, plaintiff had no clear legal right to *performance* of that duty; (2) plaintiff was barred from seeking mandamus because he had an adequate remedy at law in quo warranto; and (3) plaintiff lacked standing. Ultimately, the trial court agreed with defendants that plaintiff had "not shown he has a clear legal right to the performance of the alleged duty[.]" Thus, the trial court denied plaintiff's request for a writ of mandamus and dismissed the case.

On appeal, plaintiff argues that the trial court erred by so ruling. We agree.

We review de novo, as questions of law, whether defendants have a clear legal duty to perform and whether plaintiff has a clear legal right to performance of any such duty. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518; 866 NW2d 817 829 (2014). Related issues of statutory interpretation are also reviewed de novo. *Beach v Lima Twp*, 489 Mich 99, 105; 802 NW2d 1 (2011). Contrastingly, because mandamus is a "discretionary writ," *Coalition for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 375; 820 NW2d 208 (2012), we review for an abuse of discretion a trial court's decision whether to grant mandamus relief, *Rental Props*, 308 Mich App at 518.

> To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that: (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. In relation to a request for mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided. [*Id.* at 518-519 (quotation marks and citations omitted).]

"A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hillsdale Co Senior Services, Inc v Hillsdale Co*, 494 Mich 46, 63 n 11; 832 NW2d 728 (2013) (quotation marks and citation omitted).

Several provisions of Michigan election law are at issue here. In pertinent part, MCL 168.558 provides:

> (1) When filing a[n] . . . affidavit of candidacy for a . . . township . . . office in any election, a candidate shall file with the officer with whom the petitions, fee, or affidavit is filed 2 copies of an affidavit of identity.

* * *

(2) An affidavit of identity *shall* contain the candidate's name, address, *and ward and precinct where registered, if qualified to vote at that election . . . .*

\* \* \*

(4) An affidavit of identity shall include a statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid; and a statement that the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both. *If a candidate files the affidavit of identity with an officer other than the county clerk or secretary of state, the officer shall immediately forward to the county clerk 1 copy of the affidavit of identity by first-class mail. The county clerk shall immediately forward 1 copy of the affidavit of identity for state and federal candidates to the secretary of state by first-class mail. An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section* [i.e., § 558]. [Emphasis added.]

Thereafter, as stated in MCL 168.349(2):

Within 4 days after the last day for filing nominating petitions, the township clerk shall deliver to the county clerk a list setting forth the name, address, and political affiliation and office sought of each candidate who has qualified for a position on the primary ballot.

The county clerk then certifies to the proper board(s) of election the name and address "of each party candidate whose petitions meet the requirements of this act, together with the name of the political party and the office for which he or she is a candidate." MCL 168.552(1). Section 552 includes detailed procedures for investigating and resolving complaints about nominating petitions, but the resolution of challenges to affidavits of identity is not addressed.

Pursuant to MCL 168.559, the county election commission prepares and furnishes the official primary ballots. Notably, MCL 168.550 provides:

No candidate shall have his name printed upon any official primary election ballot of any political party in any voting precinct in this state unless he shall have filed nominating petitions according to the provisions of this act, and all other requirements of this act have been complied with in his behalf, except in those counties qualifying candidates upon the payment of fees.

Further, MCL 168.567 provides:

The boards of election commissioners shall correct such errors as may be found in said ballots, and a copy of such corrected ballots shall be sent to the secretary of state by the county clerk.

-3-

Here, contrary to defendants' arguments both below and on appeal, we conclude that the pertinent statutory provisions create a clear legal duty on behalf of the Wayne County defendants.[1] Under § 558(4), those defendants had a clear legal duty to "not certify to the board of election commissioners the name of a candidate who [had] fail[ed] to comply" with the requirement, under § 558(2), of duly including the precinct number where the candidate was registered to vote.[2] It is undisputed that Schnettler and Heise failed to comply with § 558(2). Hence, the Wayne County defendants had a clear legal duty not to certify Schnettler and Heise's names. The language in § 550—"[n]o candidate shall have his name printed upon any official primary election ballot . . . unless he shall have filed nominating petitions according to the provisions of this act"—underscores the existence of such a clear legal duty on behalf of the Wayne County defendants. Finally, § 567 demonstrates that, because the Wayne County defendants failed to perform their clear legal duty under § 558(4), they now have a clear legal duty to "correct" such errors as may be found in the resulting, improper ballots. Thus, the "clear legal duty" element for mandamus is plainly met.

Moreover, the action that plaintiff now seeks to compel is decidedly "ministerial" in nature. The duty to correct the ballots under § 567 is set forth "with such precision and certainty as to leave nothing to the exercise of discretion or judgment." See *Hillsdale*, 494 Mich at 63 n 11. Because the affidavits of identity, filed with the Plymouth defendants and delivered by the Plymouth defendants to the Wayne County defendants,[3] were defective on their face, defendants' assertion that they had no authority to review the affidavits is misplaced. Rather, by doing nothing more than the ministerial task of completing a facial review of the affidavits, defendants would undertake to perform their clear legal duty under § 558(4) to "not certify to the board of election commissioners the name of a candidate who [had] fail[ed] to comply" with § 558(2).

We further conclude that plaintiff lacks an adequate legal or equitable remedy that might achieve the same result as mandamus. Although a writ of quo warranto might have been an appropriate remedy to seek in this action, before seeking such a writ plaintiff would have been forced to seek "special leave of the court." See *Hanlin v Saugatuck Twp*, 299 Mich App 233, 240; 829 NW2d 335 (2013). Given the time constraints and procedural limitations, we cannot conclude that quo warranto was an adequate remedy to achieve the *same* result that plaintiff could achieve by utilizing mandamus.

---

[1] We agree with the Plymouth defendants that a writ of mandamus cannot now issue against them because, since the affidavits of identity have already been submitted to Garrett, the Plymouth defendants now lack authority to take any action regarding the ballots. Mandamus is not directed at ascertaining whether an error occurred in the *past*. In other words, even if the Plymouth defendants mishandled the affidavits of identity, their role in the matter has ended; ergo, mandamus will not lie against them.

[2] Because it is entirely inconsistent with the plain language of the statute, we reject defendants' argument that the Legislature intended the final sentence of § 558(4) to apply only to that *sub*section rather than the entire "section."

[3] See MCL 168.558(4).

Having concluded that the other three elements for mandamus are satisfied, we turn to the first element, i.e., whether plaintiff has a clear legal right to performance of the Wayne County defendants' statutory duties. We conclude that he does.

Although our courts will generally "deny the writ of mandamus to compel the performance of public duties by public officials unless the specific right involved is not possessed by citizens generally," *Rental Props*, 308 Mich App at 519, quoting *Univ Med Affiliates, PC v Wayne Co Executive*, 142 Mich App 135, 143; 369 NW2d 277 (1985), citing *Inglis v Pub Sch Employees Retirement Bd*, 374 Mich 10, 13; 131 NW2d 54 (1964), "[i]t is generally held, in the absence of a statute to the contrary, that a private person as relator may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public," *Helmkamp v Livonia City Council*, 160 Mich App 442; 408 NW2d 470 (1987), quoting 26 Am Jur 2d, Elections, § 367. Whether a private person should be permitted to do so under the facts of a given case "is a matter within the discretion of the court." *Amberg v Welsh*, 325 Mich 285, 291; 38 NW2d 304 (1949), overruled in part on other grounds by *Wallace v Tripp*, 358 Mich 668; 101 NW2d 312 (1960). See also *Thompson v Vaughan*, 192 Mich 512, 522; 159 NW 65 (1916) (noting that whether electors have "such interest as entitles them to institute [mandamus] proceedings . . . is a matter of discretion on the part of the court, and not of law," and holding, "The relators are electors of this state interested in the proper administration of the law; and, under the circumstances of this case and the public importance of the questions raised, the objection to their instituting these proceedings will not be sustained."). As discussed in *People ex rel Ayres v Bd of State Auditors*, 42 Mich 422, 429-430; 4 NW 274 (1880),

> The rule which rejects the intervention of private complainants against public grievances is one of discretion and not of law. There are serious objections against allowing mere interlopers to meddle with the affairs of the state, and it is not usually allowed, unless under circumstances where the public injury, by its refusal, will be serious. In the case of *People ex rel Drake v Regents of the University*, 4 Mich 98 [(1856)], and *People ex rel Russell v Inspectors of the State Prison*, [4 Mich] 187 [(1856)], the court took pains to guard against any decision that would prevent complaint by a private relator, where the public interest requires prompt action, and where the public prosecutors will not interfere. There is, as there shown, more liberality in some states than in others. But we find no reason to consider the matter as one lying outside of judicial discretion, which is always involved in mandamus cases concerning the relief as well as other questions.

Moreover, our Supreme Court's decision in *Martin v Secretary of State*, 482 Mich 956 (2008) (*Martin II*), which reversed *Martin v Secretary of State*, 280 Mich App 417; 760 NW2d 726, 734 (2008) (*Martin I*), also supports our holding. In *Martin I*, a candidate for judicial office, Martin, sought, *inter alia*, a writ of mandamus against the Board of State Canvassers and the Secretary of State that would permit him to appear on the ballot. *Id.* at 421-422. Two incumbent judges for the same office (i.e., the office Martin wished to win in the election) sought and were denied leave to intervene in the circuit court. *Id.* Ultimately, the circuit court granted Martin's request, ordering the Secretary of State to take steps that permitted Martin to appear on the ballot. *Id.* at 422-423. The Secretary of State did not appeal, but the incumbent judges did,

arguing that they should have been granted leave to intervene in the circuit court. *Id.* at 418. The *Martin I* majority affirmed the circuit court, reasoning that the incumbent judges were not "aggrieved parties" with standing to challenge the circuit court's ruling:

> [O]ur opinion must be narrowly construed and limited to the unique facts of this case. This narrow holding stands solely for the conclusion that pursuant to the dictates set forth by our Supreme Court in *Federated Ins Co*[ *v Oakland Co Rd Comm*, 475 Mich 286; 715 NW2d 846 (2006)] and *Nat'l Wildlife Federation*[ *v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004), overruled *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010) (*LSEA*)], a candidate for judicial office has not suffered an injury and therefore is not an aggrieved party and does not have standing solely because the candidate is required to run in a contested judicial election. [*Id.* at 430.]

The *Martin I* majority "emphasize[d] that nothing [its] opinion should be construed to limit citizens' access to our courts to ensure that the election laws of this state are enforced." *Id.* at 429-430. Judge O'Connell dissented:

> The majority concludes that appellants [the incumbent judges] are not aggrieved parties and, therefore, lack standing as Michigan citizens to intervene in the underlying election dispute in this case. I respectfully disagree. I believe that appellants were wrongfully denied their opportunity to intervene in this case, both in their capacities as private citizens and as candidates for public office. By concluding otherwise, the majority has essentially determined that Michigan citizens do not automatically have standing to ensure that the election laws of this state are properly enforced.
>
> * * *
>
> [T]he trial court incorrectly focused solely on appellants' status as judicial candidates and completely disregarded their status as voters in the district with a direct interest in the proper application of the election laws being upheld. Plaintiffs argue that appellants' status as voters is irrelevant because they have suffered no harm that the general public did not suffer. However, this Court has recognized that "[e]lection cases are special . . . because without the process of elections, citizens lack their ordinary recourse." *Deleeuw v Bd of State Canvassers*, 263 Mich App 497, 505–506, 688 NW2d 847 (2004). Because the improper implementation of election laws affects the process by which citizens normally exercise their collective voice to uphold the status quo or effectuate change, "ordinary citizens have standing to enforce the law in election cases." *Id.* at 506. See also *Helmkamp*[, 160 Mich App at 445] (holding that the plaintiffs in an election case "were not required to show a substantial injury distinct from that suffered by the public in general"). "[T]he right to vote is an implicit " 'fundamental political right' " that is " 'preservative of all rights." ' " *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 16, 740 NW2d 444 (2007) (citation omitted). . . . Given that this case concerns a trial court's application of equity to enter an injunction that permits an

end run around election laws, appellants, in their capacity as ordinary citizens and voters, have suffered an injury and have standing to bring their claim to remedy this injury. *Helmkamp*, *supra* at 445. Having suffered an injury as a result of the trial court's actions, appellants are aggrieved parties. *Manuel v Gill*, 481 Mich 637, 643–644, 753 NW2d 48 (2008). [*Martin I*, 280 Mich App at 430-433 (O'Connell, P.J., dissenting) (footnotes omitted).]

The incumbent judges sought leave to appeal in our Supreme Court, which, in lieu of granting leave to appeal, reversed "the judgments of the Court of Appeals and the [c]ircuit [c]ourt for the reasons stated in [Judge O'Connell's] dissenting opinion, but only as to the issues of candidate standing and the trial court's application of equity." *Martin II*, 482 Mich at 956.

Although *Martin II* limited its decision "to the issues of candidate standing and the trial court's application of equity," we do not conclude that the Supreme Court, through its one-paragraph decision in *Martin II*, intended to *tacitly* overrule more than a century of settled election-law precedent, including *Helmkamp*, *Amberg*, *Thompson*, *Ayres*, *Deleeuw*, *Drake*, and *Russell*. Rather, by limiting its holding to candidate standing, we believe the *Martin II* Court simply ruled on the narrowest issue by which that appeal could be fully resolved. See *Kent Co Prosecutor v Kent Co Sheriff*, 428 Mich 314, 325; 409 NW2d 202 (1987) (noting that our Supreme Court will "adopt[] the most narrow holding in deciding the constitutional issues before it.").[4]

Here, because the trial court failed to recognize that it *had* discretion, it abdicated its discretion to decide whether plaintiff should be permitted, as an elector, to vindicate public election rights by mandamus. Such abdication constitutes an abuse of discretion. *Rieth v Keeler*, 230 Mich App 346, 348; 583 NW2d 552 (1998).

Having concluded that the trial court failed to exercise its discretion to decide this issue, we would ordinarily remand this matter to the trial court for further proceedings. Given the exigencies of this election matter, however, and the reality of the trial court's docket, a remand order at this time would likely render plaintiff's action moot before the trial court would have an opportunity to rule. Hence, we feel compelled to consider the substantive merits and render a decision. See MCR 7.216(A)(7) ("The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . enter any judgment or order or grant further or different relief as the case may require[.]").

The situation before us is one where the public interest requires prompt action, and where the public prosecutors will not interfere. As explained *supra*, defendants have neglected their clear legal duty to ensure compliance with MCL 168.558. As a result, despite the fact that Schnettler and Heise are legally unentitled to appear on the ballot, they will nevertheless do so absent judicial intervention. Defendants suggest that the public right plaintiff seeks to vindicate in this action is trivial. They contend that Schnettler and Heise's noncompliance with § 558(2) is

---

[4] At the time *Martin II* was decided, standing was considered to be a constitutional question. See *LSEA*, 487 Mich at 359-361.

a "small detail" that should be overlooked. That argument is misplaced. It is not our role to make policy decisions regarding which of the Legislature's mandates can be ignored as insignificant. *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 602; 822 NW2d 159 (2012). In summary, we hold that the public has a clear legal right in the due enforcement of MCL 168.558 against Schnettler and Heise. We further hold that, as an elector, plaintiff is entitled in this case to vindicate the public's clear legal right.

Hence, we affirm the trial court's ruling regarding the Plymouth defendants but reverse its denial of plaintiff's request for a writ of mandamus against the Wayne County defendants.[5] The Wayne County defendants are hereby ordered to take whatever steps are necessary to perform their duties as described in this opinion, particularly their duties under MCL 168.567.[6] A public question being involved, no costs may be taxed under MCR 7.219. This opinion shall have immediate effect pursuant to MCR 7.215(F)(2).

/s/ Kurtis T. Wilder
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood

---

[5] Given our decision that plaintiff has asserted a valid cause of action, we reject defendants' argument that plaintiff lacked standing to institute this action. "[A] litigant has standing whenever there is a legal cause of action." *LSEA*, 487 Mich at 372. Additionally, we deny, as moot, the motion of Thomas Parrelly to intervene in this Court as an appellant.

[6] Those duties necessarily include taking the steps necessary to remove Schnettler and Heise from the ballot for the August 2, 2016 primary election before that election occurs. See *Michigan v Wayne County Clerk*, 466 Mich 640; 648 NW2d 202 (2002).